**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.** **Case No. 8:25-cr-00254-VMC-SPF**

**GABRIEL WHITE**
**____________________________________/**

## SENTENCING MEMORANDUM

The Defendant, Gabriel White, by and through his attorney, pursuant to Fed. R. Crim. P. 32, respectfully asks this Court to sustain his Guideline objections and sentence him to a term of 21 months in prison. If the Court overrules his objections and adopts Probation's guideline range, he respectfully asks that he be sentenced to 57 months in prison. In any event, he asks for a 3-year term of supervised release with reasonable conditions to follow. In support of his requests, he asks this Court to consider all the *Booker* factors at 18 U.S.C. § 3553(a) in fashioning a sentence that's sufficient but not greater than necessary to accomplish the statutory purposes of sentencing.

### I. Introduction.

Gabriel White has made enough bad decisions in his 33 years that it would be easy to reduce him to the sum of those decisions. The Presentence Investigation Report places him in Criminal History Category V. Doc 79, PSR at

¶ 40. He stands convicted of possessing a loaded firearm despite knowing that, as a convicted felon, he could not lawfully possess one. *Id.* at ¶¶ 13–16. The firearm was discovered after Mr. White, significantly impaired by alcohol, crashed a vehicle into a rock structure. *Id.* at ¶¶ 11–13. His breath-alcohol readings were over the legal limit, and he resisted deputies' efforts to detain him. *Id.* at ¶ 12.

Those are serious facts. Mr. White doesn't ask the Court to minimize them. But § 3553(a) requires the Court to consider more than the offense and a criminal-history category. It requires consideration of the person who committed the offense: the childhood that shaped him, the opportunities he lacked, the problems he developed, the responsibilities he carries, the work he has performed, and the circumstances that bear on whether he will offend again. That fuller picture matters here.

Mr. White recalls physical abuse in childhood serious enough that child protective services became involved, and he was sent to live with his grandmother for a time. *Id.* at ¶ 50. He grew up in high-crime neighborhoods and moved among the homes of his mother, father, grandmother, aunts, and godmother. *Id.* at ¶ 49. He entered Exceptional Student Education in the third grade and left school after the eleventh grade without graduating. *Id.* at ¶ 66.

Yet as an adult, he repeatedly worked. He held jobs in restaurants, plumbing, construction, paving, and machine operation. *Id.* at ¶¶ 69–82. Immediately before his federal arrest, he worked for Ajax Paving Industries for $20 an hour. *Id.* at ¶ 69. He is also the father of six minor children. *Id.* at ¶¶ 51–52. And alcohol, the most obvious risk factor present in this offense, became substantially worse after his cousin died in a vehicle accident in 2023. *Id.* at ¶ 61.

What had been social drinking became tequila and cognac several times a week and sometimes every day. *Id*. His drinking damaged an important relationship, and before his federal arrest he had begun weekly therapy to address past trauma. *Id.* at ¶¶ 51, 60. Probation itself identifies Mr. White's "difficult upbringing and family ties and responsibilities" as circumstances relevant to a below-Guidelines sentence. *Id.* at ¶ 102. They warrant one here. Let's take each of the *Booker* factors in turn.

## II. The history and characteristics of Mr. White.

Mr. White's history and characteristics strongly support a downward variance. 18 U.S.C. § 3553(a)(1). We need to consider his childhood, the educational opportunities he missed out on, his criminal history, his steady employment, his children, his addictions, and the therapy he attempted.

**a. His childhood was marked by instability and mistreatment.**

Mr. White acknowledges that his basic needs were met. *Id.* at ¶ 49. But he also recalls physical abuse by family members, including his mother. *Id.* at ¶ 50. He was teased and punished for bedwetting, particularly by his mother's girlfriend, and child protective services ultimately became involved. *Id*. He then lived with his grandmother for a period of time. *Id*.

His mother remembers the discipline differently. *Id*. The defense does not hide that disagreement. But the undisputed institutional fact remains: CPS intervened, and Mr. White was removed from the home for a time. He also grew up in high-crime neighborhoods and regularly moved among relatives' homes. *Id.* at ¶ 49. These circumstances don't determine criminal behavior, but they're part of the history Congress requires the Court to consider. Explanation isn't exoneration. It's context.

**b. Educational difficulties narrowed his opportunities early.**

Mr. White entered Exceptional Student Education in the third grade and remained there until his junior year. *Id.* at ¶ 66. He later began standard coursework but could not accumulate enough credits to graduate on time and left school after the eleventh grade. *Id*. He's capable of working and functioning independently. But he entered adulthood without a diploma and after years in

special education. That limited starting point matters when considering the life trajectory that followed.

#### c. His criminal history is serious, but being Category V doesn't paint a full picture.

Mr. White's record cannot be called minor. He received probation arising from a lewd-or-lascivious-battery case committed when he was nineteen and later violated that probation. *Id.* at ¶ 33. At age 21, he committed four small crack-cocaine sales and one marijuana sale to an undercover officer over several days. *Id.* at ¶ 34. The crack transactions involved between 0.3 and 0.5 grams and payments between $40 and $80. *Id*. Later cases involved possession of approximately 0.7 grams of crack cocaine and, separately, three grams of crack cocaine and two grams of marijuana. *Id.* at ¶¶ 36–37. He also sustained the DUI conviction arising from this crash. *Id.* at ¶ 38. That history is substantial.

But much of the scored conduct is drug-related and involved street-level quantities. There is also mitigating context within the record itself. During both state-prison terms, Mr. White incurred no disciplinary infractions. *Id.* at ¶¶ 34, 36. He worked during each term. *Id*. That is concrete evidence that, in a structured environment with rules and expectations, Mr. White has demonstrated the ability to comply.

**d. Mr. White has repeatedly returned to lawful and gainful employment.**

The PSR documents sustained efforts to work. Mr. White has been employed as a plumbing laborer, dishwasher, line cook, pizza maker, paving laborer, and machine operator. *Id.* at ¶¶ 69–82. After his most recent state incarceration, he worked at numerous restaurants before obtaining employment at Ajax Paving Industries in February 2025. *Id.* at ¶¶ 69–77. He remained there until his federal arrest and earned $20 an hour. *Id.* at ¶ 69. This matters. Mr. White isn't someone for whom the Court must imagine a lawful path after prison. He has repeatedly traveled one. But he's never been to federal prison with all the programs that'll be available to him. He'll have the chance at learning a meaningful trade while serving out his prison sentence. Employment, and the hope of learning a new trade, gives supervised release something real to build upon.

**e. His children create responsibilities has hasn't always met but must eventually resume.**

Mr. White has six minor children. *Id.* at ¶¶ 51–52. The record doesn't portray perfect fatherhood. He's been separated from one child for years, there isn't any documented child-support payments in an active dependency matter involving two children, and alcohol contributed to the end of another relationship. *Id.* at ¶¶ 51–52. Those failures should neither be disguised nor do

they his responsibilities disappear as a father. A lengthy prison sentence that's greater than what's necessary would only hurt his children in the long run, his ability to support them, and his responsibility to be a dad for his children during the most informative years of their lives. The hope would be to return to his family, begin his path towards rehabilitation, and serve as a role model—teaching his kids that even those who make mistakes again and again can return gracefully back onto the right path in life.

**f. Alcohol is an identifiable and treatable risk factor.**

Mr. White began drinking regularly at nineteen. *Id.* at ¶ 61. After his cousin died in a vehicle accident in 2023, his alcohol use escalated to drinking liquor multiple times each week and sometimes daily. *Id*. It damaged his relationship with the mother of two children. *Id.* at ¶ 51. Then came this offense: a single-car crash and breath-alcohol readings over the legal limit. *Id.* at ¶¶ 11–12.

The defense doesn't claim grief compelled his conduct. The point is more practical. There's an identifiable,  concrete risk factor that worsened shortly before the offense and can be treated. Mr. White told Probation he doesn't presently believe he needs substance-abuse treatment. *Id.* at ¶ 64. But his record suggests otherwise. Treatment should be a meaningful component of supervised release.

**g. He had begun therapy before his federal arrest.**

Mr. White has no formal mental-health diagnosis. *Id.* at ¶ 60. But beginning in 2024, he attended weekly therapy concerning past trauma and reported that it was helpful. *Id*. He has asked to continue outpatient mental-health treatment. *Id*. It's not extraordinary rehabilitation but it's evidence that treatment had begun before sentencing advocacy supplied an incentive to talk about it. The Court should build upon that effort by including a mental health treatment component to his term of supervised release.

**III. The nature and circumstances of the offense.**

The offense is serious, but its actual circumstances matter. 18 U.S.C. § 3553(a)(1). Mr. White drove while seriously impaired, crashed the vehicle, resisted detention, and unlawfully possessed a loaded .45-caliber firearm. *Id.* at ¶¶ 11–13. The inventory search also revealed suspected cocaine and marijuana. *Id.* at ¶ 13. The defense doesn't minimize any of that. The combination of alcohol, a car, and a firearm created obvious danger. But sentencing must remain tied to what actually occurred.

Mr. White didn't fire the weapon. He didn't brandish it at the deputies. The offense conduct doesn't allege that he threatened anyone with it that night. *Id.* at ¶¶ 11–16. Law enforcement didn't respond to a shooting, robbery, or armed

confrontation; the firearm was discovered during the investigation of a single car crash. Those distinctions matter.

Section 922(g) covers conduct ranging from simple unlawful possession to firearms used during violent crimes. Mr. White deserves punishment for the serious offense he committed, not for aggravated conduct that didn't occur. Mr. White pleaded guilty pursuant to a written plea agreement. *Id.* at ¶ 5. Probation applies acceptance of responsibility and reports no obstruction enhancement. *Id.* at ¶¶ 18, 27–28. The defense does not characterize that as extraordinary rehabilitation. But Mr. White accepted a federal felony conviction and did not require a trial. That deserves appropriate—if measured—weight in deciding the ultimate sentence. A sentence below 70 months (the low-end of Probation's guideline calculation) can and does recognize both propositions.

**IV. The need for the sentence imposed to reflect just punishment, respect for the law, adequate deterrence, and correctional treatment.**

**a. 18 U.S.C. § 3553(a)(2)(A) and (B).**

This isn't a request to avoid prison under. Whether it's 21 months or 57 months or even 70 months in prison it means years in federal custody, separation from six children, loss of employment and income, and federal supervision afterward. The question isn't whether Mr. White should be punished. He should. It's whether another 13 months in prison is necessary to make that punishment just. The defense respectfully submits it isn't. Respect for law isn't measured

solely by sentence length. It's also promoted when punishment corresponds to actual conduct and reflects an individualized judgment. 18 U.S.C. § 3553(a)(2)(B).

Mr. White's record makes specific deterrence a legitimate concern. He has experienced probation, jail, and state prison and nevertheless returned to criminal conduct. *Id.* at ¶¶ 33–38. That history justifies substantial punishment. But it is already a principal reason he is in Criminal History Category V and facing Probation's 70-to-87-month range. *Id.* at ¶¶ 40, 87. A sentence of 57 months remains a federal prison sentence measured in years. Combined with targeted treatment and federal supervision, it provides meaningful specific deterrence. General deterrence likewise does not depend on the marginal difference between two substantial federal prison terms. The message remains unmistakable: possessing a firearm as a convicted felon under these circumstances results in serious federal punishment.

**b. 18 U.S.C. § 3553(a)(2)(C).**

Longer incarceration protects the public while Mr. White remains confined. But he will eventually return to the community. The more durable question is what reduces his risk when he does. The *Id.* identifies useful answers: Mr. White can work; he remained discipline-free during two state-prison terms; he wants a GED and vocational training; he had already begun therapy; and his alcohol misuse is identifiable and treatable. *Id.* at ¶¶ 34, 36, 60–61, 68–82. A

substantial custodial sentence followed by structured federal supervision addresses public safety twice: through incapacitation now and risk reduction later.

**c. 18 U.S.C. § 3553(a)(2)(D).**

Mr. White wants to obtain a GED and has expressed interest in culinary training. *Id.* ¶ 68. He has extensive practical work experience. *Id.* at ¶¶ 69–82. He requests continued mental-health treatment, and the circumstances of this offense strongly support alcohol treatment. *Id.* at ¶¶ 60–64. Probation likewise identifies mental-health and substance-abuse treatment as potential special conditions. *Id.* at ¶ 103. These needs support a sentence combining incarceration with robust supervised release. They do not support extending imprisonment for rehabilitation. *See Tapia v. United States*, 564 U.S. 319, 335 (2011). Mr. White may need treatment. He doesn't need extra prison time in order to receive it.

**V. The kinds of sentences available.**

Under § 3553(a)(3), the available sentencing tools permit a serious but lesser term of imprisonment. 18 U.S.C. § 3553(a)(3). The offense carries a statutory maximum of fifteen years and up to three years of supervised release. PSR at ¶¶ 86, 89–90. A sentence of 21 months (at best) or 57 months (at worst) followed by supervised release gives the Court substantial tools: incarceration, substance-abuse treatment, mental-health treatment, testing, employment

requirements, educational programming, and other lawful reentry conditions. That combination can satisfy the purposes of sentencing without requiring the bottom of the advisory range.

**VI. The Guidelines and his advisory guideline range.**

Mr. White maintains his objections to the guideline calculation. But should the Court overrule his objections, he doesn't ask the Court to reject §2K2.1 categorically. The narrower point is that Mr. White's prior record already significantly drives both his offense level and Criminal History Category V. The Court may reasonably conclude that the resulting range gives those convictions more weight than necessary when balanced against his difficult upbringing, educational limitations, work history, six children, discipline-free prison record, worsening alcohol misuse, prior therapy, and prospects for structured supervision. Probation itself identifies his difficult upbringing and family responsibilities as potentially mitigating. *Id.* at ¶ 102. A variance therefore does not reject the Guidelines; rather, it completes the § 3553(a) analysis.

**VII. The need to avoid any unwarranted sentencing disparities among similarly situated defendants.**

Section 3553(a)(6) seeks to avoid unwarranted disparities among similarly situated defendants. It does not require identical sentences for everyone who shares an offense level and criminal-history category. Mr. White's requested variance rests on individualized circumstances documented in the PSR: his

childhood, education, employment, criminal-history context, discipline-free prison terms, alcohol misuse, therapy, children, and the actual manner in which this firearm offense occurred. Those are legitimate distinctions. A sentence based on them would be individualized, not arbitrary.

**VIII. Conclusion.**

Mr. White's offense is serious. His criminal history is serious. His sentence should be serious. But a serious sentence need not be a Guideline sentence. He respectfully asks this Court to sustain his Guideline objections and sentence him to a term of 21 months in prison. If the Court overrules his objections and adopts Probation's guideline range, he respectfully asks that he be sentenced to 57 months in prison. Whatever the result, he asks for a 3-year term of supervised release with reasonable conditions to follow.

What necessary sentencing purpose is served by additional time in prison between 21 or 57 and 70 months if he loses all his objections? It cannot undo the crash. It cannot change Mr. White's criminal history. It cannot restore his childhood. It cannot repair his relationship with his children. And prison alone cannot treat his addictions. The requested sentence provides serious punishment while preserving a meaningful role for treatment, employment, structure, accountability, and supervision. The defense isn't asking the Court to find Mr. White blameless. It asks to find that he's not hopeless. As Bryan Steven aptly put

it in his book, *Just Mercy*, "Simply punishing the broken—walking away from them or hiding them from sight—only ensures that they remain broken and we do, too. There is no wholeness outside of our reciprocal humanity."

Federal sentencing requires accountability and proportionality. And here 21 months at the bottom or 57 months in prison at the top, depending on how his guideline shake out, is more than sufficient. And 3 years of supervised release will help to monitor and motivate him to be rehabilitated. This sentence would protect the public, promote deterrence, and provide a realistic structure for rehabilitation without imposing more punishment than necessary. This, he believes, is the sentence that § 3553(a) requires.

Respectfully submitted,

Charles L. Pritchard, Jr.
Federal Public Defender

*/s/ Stephen Consuegra*
Assistant Federal Public Defender
Florida Bar No. 105816
400 N Tampa St, Ste. 2700
Tampa, FL 33602
Phone: (813) 228-2715
Fax: (813) 228-2562
E-mail: stephen_consuegra@fd.org

## CERTIFICATE OF SERVICE

I HEARBY CERTIFY that on August 26, 2026, a true and correct copy of the foregoing was furnished by the CM/ECF system with the Clerk of the Court, which will send a notice of the electronic filing to the following: AUSA Brooke Michelle Padgett.

*/s/ Stephen Consuegra*
Assistant Federal Public Defender